1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7  EVANSTON INSURANCE
   COMPANY,
8
                              Plaintiff,
9        v.

10 WORKLAND & WITHERSPOON,
   PLLC, a limited liability company; and
11 ERIC SACHTJEN, an individual,

12                            Defendants.

NO:  2:14-CV-193-RMP

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT FOR DECLARATORY
JUDGMENT AND GRANTING
DEFENDANTS' MOTION TO
STRIKE STATEMENT OF FACTS

13

14        Before the Court is Plaintiff Evanston Insurance Company's Motion for

15 Summary Judgment for Declaratory Judgment of No Coverage, **ECF No. 29**.  Also

16 before the Court is Defendants' Motion to Strike Plaintiff's Statement of Facts,

17 **ECF No. 35**.  The Court has reviewed the motions, all other relevant findings, and

18 is fully informed.

19 / / /

20 / / /

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 1

# BACKGROUND

**A.    Procedural History**

Plaintiff Evanston Insurance Company ("Evanston") is an Illinois insurance corporation that issued two legal malpractice insurance policies to Defendant Workland & Witherspoon, PLLC, a Washington state law firm and Professional Limited Liability Company.  ECF No. 1 at 1-3.  Defendant Eric Sachtjen (collectively with Defendant Workland and Witherspoon, "Workland") was an attorney-employee of Workland & Witherspoon.  ECF No. 1 at 2.

This insurance coverage dispute arises from two state tort actions, referred to as the *Red Tower* and *Unit 3* lawsuits, filed by James Darling and others on April 2, 2014, against Workland in Spokane County Superior Court concerning Workland's alleged involvement in a fraudulent real estate purchasing scheme. ECF No. 1 at 2-3.  The plaintiffs in those state proceedings seek damages and other remedies from Workland.  ECF No. 1 at 2-3.

Workland tendered the defense and indemnity of both lawsuits to Evanston under the policies valid through January 2015.  ECF No. 1 at 3.  Evanston agreed to represent Workland in the state court actions, subject to a reservation of rights to deny coverage, including any duty to defend or indemnify Workland.  ECF No. 1 at 3.  In letters dated June 12, 2014, Evanston reserved its right to completely deny Workland coverage for the *Red Tower* and *Unit 3* lawsuits pursuant to the

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 2

1   "Specific Incidents Exclusion" of the Policies.  ECF No. 1-1, Ex. 5 at 122-23; ECF
2   No. 1-1, Ex. 6 at 136-37.

3        Evanston then filed this diversity suit, seeking a declaration of non-coverage
4   and lack of duty to defend Workland in the underlying actions.  ECF No. 1.
5   Plaintiff initially claimed six bases for lack of coverage, ECF No. 1 at 3-4, but the
6   Court stayed consideration of five pending the completion of the underlying state
7   actions.  ECF No. 18.

8        Evanston now moves for summary judgment for a declaratory judgment of
9   no coverage under 28 U.S.C. § 2201.  Evanston contends that when applying for
10  coverage Workland disclosed two prior lawsuits, referred to as the *Rothrock* and
11  *Rockrock* lawsuits, concerning the sale of related properties and involving several
12  of the same individuals as the transactions giving rise to the *Red Tower* and *Unit 3*
13  lawsuits at issue in this case.  ECF No. 29 at 2.  Evanston argues that the
14  connection between the four lawsuits bars coverage of the *Red Tower* and *Unit 3*
15  lawsuits pursuant to a specific provision of the policies, and thus urges the Court to
16  declare non-coverage for claims arising from those suits.  ECF No. 29 at 2.

17       i.    *The Red Tower and Unit 3 Lawsuits*

18       It is undisputed that on April 2, 2014, the *Red Towe*r and *Unit 3* lawsuits
19  were filed against Workland in Spokane County Superior Court concerning
20  Workland's alleged involvement in a fraudulent real estate purchasing scheme.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 3

ECF No. 1-1, Exs. 1-2.  Evanston contends that the *Red Tower*" and "*Unit* 3"

lawsuits concern Workland's allegedly injurious conduct involving the sale of

Units in the Ridpath Hotel and the Ridpath building in 2008.  ECF No. 30 at 3-5.[1]

Evanston contends that both lawsuits claim that Defendant Sachtjen

represented plaintiffs in the sale of Units 1 and 2 of the Ridpath Hotel and Unit 3

of the Ridpath building.  ECF No. 1-1, Exs. 1-2.  Evanston further argues that the

complaints allege that in March of 2008, Defendant Sachtjen was hired by the

plaintiff James Darling at the recommendation of the plaintiff Brian Main.  ECF

No. 1-1, Ex. 1 at 13; ECF No. 1-1, Ex. 2 at 35.  Defendant Sachtjen allegedly

created Red Tower, LLC for James Darling, Lawrence Brown, and Brian Main for

the purpose of purchasing Units 1 and 2 in the Ridpath Hotel.  ECF No. 1-1, Ex. 1

at 13; ECF No. 1-1, Ex. 2 at 35.  Defendant Sachtjen remains the registered agent

of Red Tower, LLC.  ECF No. 1-1, Ex. 1 at 14; ECF No. 1-1, Ex. 2 at 35-36.

According to the complaints, another defendant, Jeffreys, allegedly later

secured Defendant Sachtjen to represent both parties in the Ridpath Hotel

transaction.  ECF No. 1-1, Ex. 1 at 13; ECF No. 1-1, Ex. 2 at 35.  The plaintiffs

---

[1] The state court consolidated the two actions as they involve "common issues of
law and fact."  ECF No. 30 at 5 (ECF No. 31-2, Ex. 10 at 2).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 4

claim that Defendant Sachtjen also represented Darling in the financing and

purchase of Unit 3 of the Ridpath building.  ECF No. 1-1, Ex. 2 at 36.

The complaints accuse Defendant Sachtjen as an employee of Defendant

Workland & Witherspoon of engaging in legal malpractice related to the Ridpath

transactions.  ECF No. 1-1, Exs. 1-2.  Defendant Sachtjen allegedly represented all

parties in the Ridpath transactions despite his pre-existing attorney-client

relationship with Darling and in the absence of a waiver of any conflict of interest.

ECF No. 30 at 4 (citing ECF No. 1-1, Ex. 1 at 13-14; ECF No.1-1, Ex. 2 at 35).

Both complaints allege that the defendants engaged in a civil conspiracy "to

cooperate together in a continuous scheme to use the Ridpath building to defraud

and commit torts against the plaintiffs."  *See* ECF No. 1-1, Ex. 1 at 19; ECF No. 1-

1, Ex. 2 at 45.  Finally, the complaints contend that Jeffreys and Sachtjen knew that

the properties in question were appraised at less than the listed purchase prices and

failed to disclose that knowledge.  ECF No. 1-1, Ex. 1 at 14-15; ECF No.1-1, Ex. 2

at 36-38.

### ii.    The Insurance Policies

Workland applied for professional liability insurance with Evanston two

separate times.  ECF No. 30 at 11.  The applications were identical and include the

same disclosures.  ECF No. 1-1, Ex. 3 at 70-77; ECF No. 1-1, Ex. 4 at 99-109.  In

each insurance application, Workland replied affirmatively when asked whether

1    "any Professional Liability claim(s) [have] been made against the Applicant or any

2    person or entity proposed for this insurance or any predecessor firm(s) in the past

3    five (5) years."  ECF No. 1-1, Ex. 3 at 75; ECF No. 1-1, Ex. 4 at 104.  In both

4    applications, Workland indicated that four claims had been made against them.

5    ECF No. 1-1, Ex. 3 at 75; ECF No. 1-1, Ex. 4 at 104.

6            The initial 2013 application referenced the attached "CNA Application for

7    Lawyers Professional Liability Insurance," which mentioned the *Rothrock* and

8    *Rockrock* lawsuits and attached the complaints of those lawsuits.  ECF No. 1-1, Ex.

9    3 at 75; ECF No. 31-2, Ex. 11. The 2014 application contained a "Supplemental

10   Claim Form" that detailed both the *Rothrock* and *Rockrock* lawsuits, among other

11   past lawsuits, and referenced attached materials for more information.  ECF No. 1-

12   1, Ex. 4 at 106-108.

13           Approving both applications, Evanston issued two professional liability

14   insurance policies ("the Policies") to Workland covering the period of 2013

15   through 2015.  ECF No. 1 at 3; ECF No. 33 at 1-2; ECF No. 30 at 7.  The first

16   policy, Policy No. LA 806379, issued for the period of January 1, 2013, to January

17   1, 2014.  ECF No. 30 at 7; ECF No. 33 at 1.  The second policy, Policy No.

18   LA806828, covered the period from January 1, 2014, to January 1, 2015.  ECF No.

19   30 at 7; ECF No. 33 at 2.  The language of the policies, including the attached

20   endorsements and exclusions, is identical.  *See* ECF No. 1-1, Exs. 3-4.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 6

The Policies contained a provision titled the "Specific Incidents Exclusion," which Evanston now contends bars coverage of the *Red Tower* and *Unit 3* lawsuits. ECF No. 29 at 2. The Specific Incidents Exclusion states:

> This policy shall not apply to any Claim made against any Insured based upon, arising out of, or in any way involving any Wrongful Act or Personal Injury, any fact, circumstance, situation, incident, claim or suit referred to in an answer to any question of the application(s) or addendum(a) attached to this policy, or if this policy is a renewal or replacement of any policy issued by the Company or any of its affiliated companies, the application(s) or addendum(a) attached to the initial policy.

ECF No. 1-1, Ex. 3 at 55; ECF No. 1-1, Ex. 4 at 85.

## DISCUSSION

**A.    Defendants' Motion to Strike**

Workland moves to strike portions of Evanston's statement of material facts, ECF No. 30, and the supporting Declaration of Curt H. Feig, ECF No. 31 on several bases. ECF No. 35. At the hearing on summary judgment, Workland also objected to the certified exhibits attached to ECF No. 42, filed in opposition to the motion to strike. Each argument will be examined in turn.

### i.    Authentication and Foundation

Workland first contends that Exhibits 1-10, attached to the Declaration of Curt Feig, are inadmissible because "attorney Curt Feig lacks the requisite personal knowledge that the documents are true and correct copies of the documents." ECF No. 35 at 3. Exhibits 1-10 consist of several state court complaints, two federal

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO STRIKE ~ 7

1    grand jury indictments, a federal judgment, a state court order consolidating two

2    cases, and the Annual Report of Sundevil Investments, LLC, from the Washington

3    Secretary of State's Office.  ECF No. 31.

4        A trial court may only consider admissible evidence when ruling on a

5    motion for summary judgment.  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d

6    1179, 1182 (9th Cir. 1988) (citing Fed. R. Civ. P. 56 and *Hollingsworth Solderless*

7    *Terminal Co. v. Turkey*, 622 F.2d 1324, 1335 n.9 (9th Cir. 1908)).  Federal Rule of

8    Evidence 901(a) requires that a document be authenticated prior to admission; that

9    is, that the proponent produce evidence "sufficient to support a finding that the

10   item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Some evidentiary

11   items are self-authenticating and "require no extrinsic evidence of authenticity in

12   order to be admitted."  Fed. R. Evid. 902.  One type of self-authenticating

13   document is a certified copy of a public record, which is "[a] copy of an official

14   record – or a copy of a document that was recorded or filed in a public office as

15   authorized by law – if the copy is certified as correct by:  (A) the custodian or

16   another person authorized to make the certification . . . ."  Fed. R. Evid. 902(4).

17       When Evanston originally introduced Exhibits 1-10, none of the documents

18   was certified.  ECF No. 31.  In response to Workland's motion to strike, Evanston

19   refiled Exhibits 1-7 and 9-10 with the requisite certifications.   ECF No. 42, Ex.

20   12-20.  Workland challenged Evanston's refiling of the certified copies of the

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 8

1   exhibits 1-10 at the hearing on summary judgment.  Workland argued that it is

2   inappropriate for Evanston to cure an evidentiary deficiency in exhibits submitted

3   in support of its motion by refiling the same exhibits with the proper authentication

4   in response to a motion to strike.  The Court agrees.

5           Evanston had an opportunity to file the proper documentation in support of

6   its motion for summary judgment, but failed to do so in compliance with Federal

7   Rule of Civil Procedure 56.  Workland's motion to strike put Evanston on notice of

8   the evidentiary defect, giving Evanston the opportunity to correct its error.  In

9   response, Evanston could have requested permission to file a supplemental

10  declaration with the properly certified exhibits pursuant to Federal Rule of Civil

11  Procedure 56(e)(1).  Fed. R. Civ. P. 56(e)(1) (the court may give the parties an

12  "opportunity to properly support" a fact).  However, Evanston did not seek this

13  remedy from the Court.  Instead, Evanston simply filed a new copy of the Feig

14  declaration with the properly certified documents in support of its response to the

15  Motion to Strike, ECF No. 35.  ECF No. 42.  Therefore, Evanston never submitted

16  the properly certified documents as direct support for motion for summary

17  judgment.

18          *ii.*        The Court notes that it is likely that Evanston could produce the

19                      challenged exhibits "in a form that would be admissible in evidence."

20

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 9

See Fed. R. Civ. P. 56(c)(3).  Therefore, the Court does not strike the exhibits on that basis alone.  *Attachment*

Next, Workland alleges that Exhibits 1-11 are inadmissible under RCW 48.18.080 because they were not attached to the insurance policy when it was delivered to Workland's insurance broker.  ECF No. 35 at 4, 5-7.

Under RCW 48.18.080, an application for the issuance of an insurance policy is inadmissible in any action stemming from such policy, "unless a true copy of the application was attached to or otherwise made a part of the policy when issued and delivered."  RCW 48.18.080(1).  This provision pertains to insurance applications, and therefore does not apply to Exhibits 1-10.  However, Exhibit 11 contains the insurance applications and addenda.  Evanston concedes that these documents were not physically attached to the policies when they were delivered, but argues that the applications and addenda were "otherwise made a part of the policy," by the policy provision stating, "In consideration of the premium paid, . . . in reliance upon the statements in the application attached hereto and made a part hereof . . . the Company and the insured agree as follows: . . . ."  ECF No. 40 at 2-3.

Workland relies on a Washington Court of Appeals case, *Prest v. Am. Bankers Life Assur. Co.*, 79 Wn. App. 93, 98-99 (1995), which held that an insurance application was not admissible in an action for default judgment because

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO STRIKE ~ 10

1  the insurer failed to prove that the application and policy had been physically

2  delivered to the insured.  In their response to Evanston's motion for summary

3  judgment, Workland also cites *Lundmark v. Mut. of Omaha Ins. Co.*, 80 Wn.2d

4  804 (1972), a Washington Supreme Court case in which the court interpreted RCW

5  48.18.080 and held that an insurance application was not admissible because "there

6  was a substantial change made after the initial application as a result of information

7  voluntarily supplied by the applicant, which change was not attached to the

8  policy."  *Lundmark*, 80 Wn.2d at 805.

9       In *Lundmark*, the insured informed the insurer of a recently-discovered

10  health issue, after completing the initial application but before the policy was

11  delivered.  *Id.*  The insurer prepared an inter-office memorandum summarizing the

12  conversation and new health issue, but never attached the memorandum to the

13  policy.  *Id.* at 806.  Later, when the insurer denied coverage, it sought to use the

14  inter-office memorandum as evidentiary support.  *Id.* at 807.  The Washington

15  Supreme Court concluded that the memorandum was inadmissible under RCW

16  48.18.080 because it had not been attached and delivered with the policy, and

17  because the "insured is entitled to have the whole application before him, if any

18  part is to be used against him as a defense."  *Id.* (citing *Sandberg v. Metro. Life Ins.*

19  *Co.*, 342 Pa. 326 (1941)).

20

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 11

Evanston relies on a case from the Western District of Washington, *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988 (W.D. Wash. 2004), *aff'd,* 144 F. App'x 600 (9th Cir. 2005), to support its argument that the application and addenda were "otherwise made a part of the policy when issued and delivered." ECF No. 40 at 2-4. The court in *Cutter & Buck* distinguished *Lundmark* and held it to be inapplicable because in *Lundmark*, "the court was troubled by allowing the insurance company to use documents against the insured that the insured never had the opportunity to review." *Cutter & Buck*, 306 F. Supp. 2d at 1000. In contrast, the insured in *Cutter & Buck*, just as Workland here, had created the contested document and had every opportunity to review it. *Id.* Therefore, "there [was] no concern that [the insurer] had created, without [the insured's] knowledge, secret documents upon which the policy was based. In fact, [the insured] knew that it was required to attach these specific documents to the renewal application and that they would be relied upon by [the insurer]." *Id.* The court held that "in such a situation, the documents need not be physically attached to the policy to satisfy RCW 48.18.080(1)." *Id. Cutter & Buck* was affirmed by the Ninth Circuit Court of Appeals.

Apart from *Lundmark*, there are no other Washington Supreme Court cases on point that interpret RCW 48.18.080(1).The Ninth Circuit has interpreted RCW 48.18.080 as not applying to insurance applications exchanged between

1    sophisticated parties.  *Port of Olympia v. Lexington Ins. Co.*, 73 F. App'x 949, 950

2    (9th Cir. 2003) (citing Q*ueen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 126

3    Wn.2d 50, 112-13 (1995) (Utter, J., dissenting) for the proposition that "the

4    Legislature does not appear to have intended the (protective) attachment

5    requirement to apply" between sophisticated parties).

6        There is no question that Evanston, an insurance company, and Workland, a

7    law firm, are sophisticated parties.  The Court finds the reasoning in *Cutter & Buck*

8    persuasive.  Workland prepared the very documents that they now seek to exclude,

9    and understood when they did so that the application and addenda would be relied

10   upon by Evanston when determining coverage.  The insurance policy states that the

11   policy is made "in reliance upon the statements in the application attached hereto

12   and made a part hereof."  This provision put Workland on notice that Evanston

13   would rely on the application and that the application was made a part of the

14   policy.  Thus, the application was "otherwise made a part of the policy when

15   issued and delivered," pursuant to RCW 48.18.080(1).

16       In addition, , it appears that Workland intended the CNA Application

17   detailing prior claims made against them to be incorporated as part of their

18   application to Evanston.  Page 7 of the application asks:  "Has (have) any

19   Professional Liability claim(s) been made against the Applicant or any person or

20   entity proposed for this insurance or any predecessor firm(s) in the past five (5)

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 13

years?" ECF No. 1-1 at 75.  The box next to "Yes" is checked.  Next, the

application asks, "If Yes, Indicate total number of claims." ECF No. 1-1 at 75.  On

the line next to the question, Workland wrote:  "4 – see CNA Application for

Lawyers Professional Liability Insurance dated 11/1/12." ECF No. 1-1 at 75.

The policy application was "otherwise made a part of the policy," and

Workland clearly intended the CNA Application to be incorporated into the policy

application.  Therefore, the requirements of RCW 48.18.080(1) have been

satisfied, and the Court will not exclude Exhibit 11 on this basis.

     *iii.*    *Extrinsic Evidence*

Workland also argues that Exhibits 1-11 are inadmissible because they are

extrinsic to the insurance policy and the underlying state tort complaints.  ECF No.

35 at 5-7.  This is not a question of admissibility, but rather a question of contract

interpretation.  The fact that something may or may not constitute extrinsic

evidence does not automatically make it inadmissible.  Instead, whether the Court

considers extrinsic evidence depends on whether the policy terms are ambiguous.

     *iv.*    *Hearsay*

Workland also contends that Exhibits 1-10 constitute inadmissible hearsay

under Federal Rules of Evidence 801-803.  ECF No. 35 at 5.  Hearsay is "a

statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 14

Evid. 801(c). "Hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804, or 807." *Orr*, 285 F.3d at 778. "Inadmissible hearsay may not be considered on a motion for summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distributers*, 69 F.3d 337, 345, n.4 (9th Cir. 1995) (citing *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980)).

Exhibits 1, 2, 3, 4, 6, 7, 9, and 10, were replaced with Exhibits 12, 13, 14, 15, 17, 18, 19, and 20, attached to ECF No. 42.. At the summary judgment hearing, Evanston urged the Court to recognize the documents for their existence, which is evidence that the lawsuits occurred between the captioned parties. Accordingly, the Court recognizes the documents containing only the captions of Exhibits 1, 2, 3, 4, 6, 7, 9, and 10, and the refiled Exhibits 12, 13, 14, 15, 17, 18, 19 and 20, as admissible verbal acts with independent legal significance, and therefore, not inadmissible hearsay.

However, Evanston also offers Exhibits 1, 2, 3, 4, 6, 7, 9 and 10 for more than their existence. Evanston asks the Court to examine the contents of the documents to determine whether the allegations and facts stated within the complaints create a sufficient relationship between the *Rothrock*, *Rockrock*, *Unit 3*, and *Red Tower* lawsuits to trigger the Specific Incidents Exclusion. To conduct such an examination, the Court must delve into the allegations of the documents

1    and make inferences about the nature of the four lawsuits.  In other words,

2    Evanston asks the Court to evaluate the allegations in the *Rothrock* and *Rockrock*

3    complaints and draw the conclusion that those allegations relate to the allegations

4    in the *Unit 3* and *Red Tower* lawsuits.

5         The Court concludes that determining the relationship between the four

6    lawsuits requires the Court to consider the *Rothrock* and *Rockrock* complaints for

7    the truth of the statements that make up the allegations in Exhibits 1, 2, 3, 4, 6, 7,

8    9, and 10, the truth being that the plaintiffs in those cases made those asserted

9    allegations.  Because Evanston offers Exhibits 1, 2, 3, 4, 6, 7, 9, and 10 for the

10   truth of the matter asserted, the Court will strike them as inadmissible hearsay.

11        Additionally, Exhibit 5, although authenticated by Exhibit 16, has not been

12   certified by a custodian to be a record of a regularly conducted activity pursuant to

13   Federal Rule of Evidence 803(6).  Evanston offers that document for the truth of

14   the matter asserted that Gregory Jeffreys was a manager of Sundevil Investment

15   LLC.  ECF No. 40 at 9.  Exhibit 16, offered for that purpose, is inadmissible

16   hearsay, because Evanston has failed to provide the requisite foundation to admit

17   that document under the business records exception to hearsay.  Accordingly, the

18   Court will exclude Exhibit 5, now Exhibit 16, and strike it from the record.

19        Similarly, Exhibit 8 is hearsay, offered for the truth of the matter asserted

20   that 502 W. 1st Avenue, Spokane, Washington, is commonly referred to as the

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 16

"Ridpath Hotel East Wing."  ECF No. 40 at 9.  Exhibit 8 has neither been authenticated nor certified as a record of a regularly conducted business activity. Recognizing that Exhibit 8 is likely inadmissible, Evanston asks this Court to take judicial notice of the allegedly "commonly-understood fact" that 502 W. 1st Avenue is referred to as the Ridpath Hotel East Wing.  The Court finds that Exhibit 8 is inadmissible hearsay, and has no basis to take judicial notice that 502 W. 1st Avenue is commonly referred to as the Ridpath Hotel East Wing.

Finding that Exhibits 1-10 constitute inadmissible hearsay, the Court will not analyze Workland's objections on the basis of inadmissible summary judgment facts and relevance.  On the bases previously stated, the Court grants Defendants' motion to strike in part, finding Exhibits 1-10 attached to ECF No. 31, and their refiled counterparts, Exhibits 12-20, attached to ECF No. 42, inadmissible hearsay. Although part of Exhibit 11 survives Workland's motion to strike, the Court notes that Evanston cannot introduce the *Rothrock* and *Rockrock* complaints attached to Exhibit 11 because the Court excludes these documents as inadmissible hearsay.

**B.    Motion for Summary Judgment**

Evanston moves for summary judgment for a declaration that it has no duty to defend Workland in the *Red Tower* and *Unit 3* lawsuits and no duty to indemnify Workland in any settlement or judgment arising from those lawsuits. ECF No. 29 at 1-2.  Evanston contends that summary judgment is proper and that

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 17

there are no genuine issues of material fact because (1) the language of the Specific

Incidents exclusion unambiguously excludes coverage for the *Red Tower* and *Unit*

*3* lawsuits, (2) the *Rothrock* and *Rockrock* lawsuits were disclosed in the

applications for insurance coverage, and (3) the *Red Tower* and *Unit 3* lawsuits are

based upon, arise out of, or involve the same facts, circumstances, and situations as

the *Rothrock* and *Rockrock* lawsuits.  ECF No. 29 at 5-14.

Workland responds that summary judgment is improper because (1)

Evanston relies on inadmissible evidence to support the denial of coverage, (2) the

exclusionary language should be construed strictly against Evanston, (3)

Evanston's self-serving interpretation of the exclusion was not clear, (4)

Evanston's reliance on case law supports coverage, and (5) the motion for

summary judgment is premature [2].  ECF No. 32 at 1-2.

*i.    Standard on Summary Judgment*

Summary judgment is appropriate when the moving party establishes that

there are no genuine issues of material fact and that the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the moving party

---

[2] The Court will not analyze whether the motion for summary judgment is

premature, as Workland dismissed this argument at the Summary Judgment

hearing on March 31, 2015.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 18

demonstrates the absence of a genuine issue of material fact, the burden then shifts

to the non-moving party to set out specific facts showing a genuine issue for trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  A genuine issue of material

fact exists if sufficient evidence supports the claimed factual dispute, requiring "a

jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W.*

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The evidence presented by both the moving and non-moving parties must be

admissible.  Fed. R. Civ. P. 56(e).  Evidence that may be relied upon at the

summary judgment stage includes "depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . admissions, [and]

interrogatory answers . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  Affidavits or declarations

filed in support of or opposition to a motion must "be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the

affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P.

56(c)(4).  The court will not presume missing facts, and non-specific facts in

affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l*

*Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

In evaluating a motion for summary judgment, the Court must draw all

reasonable inferences in favor of the nonmoving party.  *Dzung Chu v. Oracle*

*Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  However, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

  ii. *Applicable Law Governing Insurance Contract Interpretation*

  Pursuant to choice of law rules, the Court applies Washington law to the question of coverage under the policy.  *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005); *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 41 Wn. App. 26, 30-31 (1985).

  Courts apply general principles of contract interpretation to determine whether an insurance policy's terms apply to extend or bar coverage.  *International Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282 (citing *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 912, n.2 (1981)).  Insurance policies are interpreted in accordance with how they would be understood by an average person.  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Zuver*, 110 Wn.2d 207, 210 (1988).  Moreover, "[i]n construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause."  *Transcontinental Ins. Co. v. Utilities Sys.*, 111 Wn.2d

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 20

452, 456 (1988) (citing *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434 (1976)).

When interpreting an insured's duty to defend under an insurance policy, courts look to the "eight corners" of the insurance policy and the underlying complaint. *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803 (2014). If the Court determines that the policy language is ambiguous, then the Court may consider extrinsic evidence. *Id.* at 803-804. Policy language is deemed ambiguous if the language on its face, "is fairly susceptible to different interpretations, both of which are reasonable." *Id.* (citing *Morgan v. Prudential Ins. Co.*, 86 Wn.2d 432, 435 (1976)). It is not enough that the policy language is complicated or confusing. *McDonald*, 119 Wn.2d at 734. Courts will not modify the policy language or "create ambiguity where none exists." *Am. Nat. Fire. Ins. Co. v. B & L Trucking and Const. Co., Inc.*, 134 Wn.2d 413, 428 (1998) (citing *McDonald*, 119 Wn.2d at 733).

Ambiguous policy exclusions must be considered "in light of the whole policy to determine whether, in that context, the exclusion applies." *Kent Farms, Inc. v. Zurich Ins. Co.*, 140 Wn.2d 396, 400 (2000). When interpreting ambiguous language, courts will give any undefined term its "plain, ordinary, and popular meaning." *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 126 Wn.2d 50, 65-66 (1994) (citing *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 881

1    (1990)).  Courts may ascertain this meaning by referring to standard English

2    dictionaries.  *Id.* at 77 (citations omitted).  It is proper for courts to construe

3    ambiguous exclusionary provisions against the insurer and render the exclusionary

4    language ineffective.  *McDonald*, 119 Wn.2d at 733.  If, however, policy language

5    is clear and unambiguous, courts will construe the language as written.

6    *Weyerhaeuser*, 123 Wn.2d at 902.

7            If policy language is ambiguous, courts may look to extrinsic evidence of the

8    intent of the parties in drafting the contract to resolve the ambiguity.  *B & L*

9    *Trucking*, 134 Wn.2d at 428.  For example, an insurance application is admissible

10   to show the intent of the parties with respect to the inclusionary or exclusionary

11   language in the policy.  *See W. Coast Pizza, Co., Inc. v. United Nat. Ins. Co. Re:*

12   *Policy No. XTP0079005*, 163 Wn. App. 33, 39-40 (2011).  Such evidence is

13   admissible "only to aid in the interpretation of the words employed, not to show

14   intention independent of the instrument."  *Spratt v. Crusader Ins. Co.*, 109 Wn.

15   App. 944, 949 (2002) (citations omitted).  Further, extrinsic evidence is admissible

16   only to determine what the parties negotiated for and to "show the situation of the

17   parties and the circumstances under which the instrument was executed."  *Berg*,

18   115 Wn.2d at 669.  Any ambiguity that remains after considering such extrinsic

19   evidence is resolved against the insurer and in favor of the insured.  *B & L*

20   *Trucking*, 134 Wn.2d at 428.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 22

1    *iii.    Duty to Defend*

2        The Court must first determine whether Evanston has a duty to defend

3    Workland in the *Red Tower* and *Unit 3* lawsuits.  The duties to defend and

4    indemnify are distinct obligations.  *See, e.g., Weyerhaeuser Co. v. Aetna Cas. and*

5    *Sur. Co.*, 123 Wn.2d 891, 902 (1994); *Holland Am. Ins. Co. v. National Indem.*

6    *Co.*, 75 Wn.2d 909, 912-913 (1969).  The duty to defend is broader, *Viking Ins. Co.*

7    *of Wis. v. Hill*, 57 Wn. App. 341, 346-47 (1990), is based on the insurer's potential

8    liability, and arises at the time an action is brought against the insured, *Bowen*, 121

9    Wn. App. at  883.  In contrast, the duty to indemnify hinges on "the insured's

10    actual liability to the claimant and actual coverage under the policy."  *Hayden v.*

11    *Mutual of Enumclaw Ins. Co.*, 141 Wn.2d 55, 65 (2000).

12        The duty to defend "exists merely if the complaint contains any factual

13    allegations which could render the insurer liable to the insured under the policy."

14    *Hayden*, 141 Wn.2d at 65.  To determine whether the duty to defend exists, courts

15    examine the insurance policy at issue to "see of the complaint's allegations are

16    conceivably covered."  *Hayden*, 141 Wn.2d at 64.  If covered, the court must next

17    "determine whether an exclusion clearly and unambiguously applies to bar

18    coverage."  *Id.* (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335,

19    338-44 (1999)).

20

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 23

The Policies that Evanston issued to Workland conceivably cover the allegations in the *Red Tower* and *Unit 3* complaints at issue in this dispute. The Policies provide coverage for claims made against the insured during the policy period, which include any "Wrongful Act arising out of Professional Legal Services" or any "Personal Injury committed by the Insured." ECF No. 1-1, Ex. 3at 58; ECF No. 1-1, Ex. 4 at 87. Both the *Red Tower* and *Unit 3* lawsuits were filed on April 2, 2014, and thus arose during the 2014 policy period. ECF No. 1-1, Exs. 1-2. Also, both the *Red Tower* and *Unit 3* complaints allege that Workland breached various duties to the Plaintiffs in connection with Workland's involvement in and representation of the parties in the real estate transactions in question. ECF No. 1-1, Exs. 1-2. These allegations fall within the language of the Policies covering any "Wrongful Act arising out of Professional Legal Services." ECF No. 1-1, Ex. 3 at 58; ECF No. 1-1, Ex. 4 at 87. Therefore, from the face of the Policies, the *Red Tower* and *Unit 3* lawsuits are conceivably covered by The Policies' terms. This conclusion is consistent with Evanston's determination to defend Workland under a reservation of rights.

iv.    *Scope of the Specific Incidents Exclusion*

The Court must now determine whether the Policies contain an exclusion that clearly and unambiguously bars Evanston's duty to defend in the *Red Tower* and *Unit 3* lawsuits.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 24

Evanston contends that the Specific Incidents Exclusion applies to bar

coverage of the *Red Tower* and *Unit 3* lawsuits.  The Exclusion states:

> [T]his policy shall not apply to any Claim made against any Insured based
> upon, arising out of, or in any way involving any Wrongful Act or Personal
> Injury, any fact, circumstance, situation, incident, claim or suit referred to in
> an answer to any question of the application(s) or addendum(a) attached to
> this policy, or if this policy is a renewal or replacement of any policy issued
> by the Company or any of its affiliated companies, the application(s) or
> addendum(a) attached to the initial policy.

ECF No. 1-1, Ex. 3 at 55; ECF No. 1-1, Ex. 4 at 85.

### a.  Admissible Disclosures

The parties first disagree about whether the plain language of the exclusion

limits disclosures to the initial application for insurance or both applications for

insurance.  ECF Nos. 29, 32.  Workland argues that the plain language of the

exclusion "clearly limits exclusion of prior incidents to the initial application."

ECF No. 32 at 8.  Workland concludes that because the *Rothrock* and *Rockrock*

lawsuits only were disclosed on an addendum to the application for the renewal

policy, not the initial policy, the disclosures have no relevance in determining

whether the Specific Incidents Exclusion applies.  ECF No. 32 at 8.  Evanston

contends that the applicability of the exclusion can be determined by looking to

both applications and addenda because Workland disclosed the prior *Rothrock* and

*Rockrock* lawsuits in both of the applications for insurance by referencing

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 25

1   supplemental documents and by providing both complaints as attachments.  ECF

2   No. 29 at 7 (citing ECF No. 30 at 11).

3          The Court need not determine the merits of either argument because the

4   Court already excluded the exhibits containing the *Rothrock* and the *Rockrock*

5   complaints as inadmissible hearsay.  It makes no difference to the Court which

6   insurance application is considered under the Specific Incidents Exclusion because

7   the Court will not consider the *Rothrock* and *Rockrock* complaints at the summary

8   judgment stage.

9          *v.    Specific Incidents Exclusion*

10          Evanston asks the Court to find that the *Red Tower* and *Unit 3* lawsuits are

11   "based upon, arise out of, or in any way involve" the *Rothrock* and *Rockrock*

12   lawsuits.   However, there is no evidence upon which the Court can make this

13   finding,   because the Court struck Exhibits 1-10 as inadmissible hearsay.

14   Therefore, the Court will not analyze the parties' arguments regarding the meaning

15   of the exclusionary language and the conduct that falls within the exclusion,

16   because there are no admissible supporting documents to that argument.

17          Evanston has not met its burden at summary judgment.  Genuine issues of

18   material fact remain as to whether the *Rothrock* and *Rockrock* lawsuits are

19   sufficiently related to the *Red Tower* and *Unit 3* lawsuits so as to bar coverage for

20   the latter lawsuits under the Specific Incidents Exclusion.  The only remaining

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 26

relevant evidence is contained in Exhibit 11, the CNA application that references

the *Rothrock* and *Rockrock* lawsuits and names the parties.  However, Exhibit 11,

without its inadmissible attachments, is insufficient.  Absent any additional,

admissible evidence evidencing the relationship between the lawsuits, Evanston's

motion for summary judgment on a request for declaratory judgement of no

coverage for the *Red Tower* and *Unit 3* lawsuits fails.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Evanston's Motion for Summary Judgment on Request for

Declaratory Judgment, **ECF No. 29**, is **DENIED.**

2.      Workland's Motion to Strike Plaintiff's Statement of Facts, **ECF No.

35**, is **GRANTED in part.**

The District Court Clerk is directed to enter this Order and provide copies to

counsel.

**DATED** this 28th day of April 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge


ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 27